UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY BOTTOM,

                              Plaintiff,
    vs.
GEORGE E. PATAKI, Individually,
and in his official capacity as
Governor of New York State;                     9:03-CV-835
BYRON D. TRAVIS, Individually,              (S.J. Scullin)
and in his official capacity as Chairman
of New York State Division of Parole;
GLENN S. GOORD, Individually and in
his official capacity as Commissioner of
New York State Dep't of Correctional
Services,

                              Defendants.
_____

APPEARANCES                                OF COUNSEL

ANTHONY BOTTOM
Plaintiff pro se

ELIOT SPITZER                            DAVID FRUCHTER
Attorney General of the               Asst. Attorney General
State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that he was improperly denied parole based on defendants' implementation of unconstitutional laws and policies.

Plaintiff seeks monetary relief as well as either release from prison or a new parole hearing, at which the "appropriate" factors can be considered.

Defendants filed a motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. (Dkt. No. 11). Plaintiff has responded in opposition to the motion. (Dkt. No. 15). On June 11, 2004, this court recommended dismissing this action based upon *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 16). Plaintiff objected to the court's recommendation, and on March 21, 2005, the Honorable Frederick J. Scullin, Jr., then-Chief Judge did not adopt this court's recommendation and remanded the case to me for review based upon the Supreme Court's decision in *Wilkinson v. Dotson*, 544 U.S. 74, 83-84 (2005). (Dkt. No. 19). On March 30, 2005, defendants filed a letter requesting renewal of their original motion to dismiss based on the alternative grounds for dismissal listed therein. (Dkt. No. 20). For the following reasons, this court agrees with defendants and finds that the complaint should be dismissed.

## DISCUSSION

1. **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d

Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).  When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).

**2.**     **Facts**

The court will repeat the facts as stated in its prior report-recommendation for clarity.  Plaintiff claims that in 1994, a federal statute, the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. §§ 13701 et seq., which included sections providing for "Truth-in-Sentencing Incentive Grants", created financial incentives for New York State to deny parole to those inmates classified as violent felony offenders and thus increased the time that these offenders spent serving their sentences in jail.  Plaintiff claims that he was denied parole based on the implementation of this statute by the defendant New York State officials.

The statute in question was aimed at preventing violent crime, and contained a great deal of other sections, providing for grants of federal funds to communities for everything from school services and assistance to "at risk" youth to prevention

of tuberculosis in correctional institutions. 42 U.S.C. §§ 13791 et seq., 13801 et seq., and 13911 et seq.

### 3.      **The Effect of Wilkinson v. Dotson**

In this court's prior report, I held that the case should be dismissed pursuant to *Heck v. Humphrey*, in which the Supreme Court held that a plaintiff may not bring a section 1983 action if a disposition in his favor would necessarily imply the invalidity of a conviction or sentence unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *Heck* uses the word "sentence" interchangeably with "continuing confinement" and "imprisonment," thus, any shortening of a term of confinement will be subject to the rule in *Heck*. *See Wilkinson v. Dotson*, 544 U.S. 74, 83-84 (2005)(citing *Heck*, 512 U.S. at 483, 486).

In *Wilkinson v. Dotson*, the Supreme Court held that where a plaintiff challenges procedures that will ***not*** necessarily lead to a speedier release, the claim ***is*** cognizable under section 1983. 544 U.S. at 82-83. In *Wilkinson*, one inmate was challenging the procedures used to determine parole "eligibility" and the other inmate was challenging the procedures for parole "suitability." *Id.* Both inmates challenged the application of harsher guidelines to their cases than were applicable when the inmates began their sentences of incarceration. *Id.* at 76-77. Neither inmate was seeking immediate release, and a decision in plaintiffs' favor would

only have resulted in a new parole hearing using the appropriate guidelines. *Id.* Since this court ruled prior to the decision in *Wilkinson*, then-Chief Judge Scullin remanded the case for further review.

Plaintiff argues that although his original complaint included a demand for "immediate release on parole," it also included the alternative request for a new parole hearing utilizing the appropriate factors for consideration, and therefore, the court should proceed to the merits. Defendants now argue that regardless of *Wilkinson*, the case fails due to the alternative bases for dismissal argued in their original motion to dismiss and not considered by this court in the first recommendation. Certainly, based on *Heck v. Humprey*, any request for "immediate release on parole" would be barred, however, based on *Wilkinson*, to the extent that plaintiff challenges the procedures used to deny him parole and seeks only a new parole hearing, the court will proceed to consider the merits of plaintiff's claims.[1]

## 4.  **Eleventh Amendment**

The court would note, as I did in my prior recommendation, that plaintiff purports to seek **damages** against the three defendants in their "official" as well as

---

[1] It could be argued that *Wilkinson* does not even apply to plaintiff's case. As stated above, one of the plaintiffs in *Wilkinson* was challenging his parole "eligibility" and the other, challenging his parole "suitability". Neither of these issues dealt with the **merits** of any release decision that the Parole Board could have made, thus, a finding in plaintiff's favor would clearly not have affected the length of his confinement because he would have to have a hearing on the merits of his release in any event. In this case, a finding that New York deliberately denied parole to plaintiff improperly might very well shorten the length of his incarceration. Thus, there is a very good argument that *Wilkinson* does not apply here. In any event, since the case may be dismissed on other grounds, the court will assume that *Wilkinson* applies.

individual capacities. It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.

An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991). Thus, to the extent that plaintiff's complaint may be read to allege claims against defendants in their official capacities, the complaint may be dismissed with prejudice since plaintiff will not be able to amend in any way that would allow an ***official capacity*** action against these three defendants for damages.

### 5. Constitutional Claims

#### A. Due Process

Plaintiff alleges that the implementation of 42 U.S.C. § 13701 *et seq.* provided a financial incentive for defendants to deny parole to violent offenders. Plaintiff argues that the implementation of this federal statute encouraged officials to violate New York's own parole statute and deny parole notwithstanding a proper analysis of the factors listed in N.Y. EXEC. LAW § 259-I. Before an individual may challenge his parole hearing based on a violation of due process, he must possess a liberty interest under the New York statutory scheme for parole decisions. *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001). However, it is well-settled that the New

York Parole scheme does *not* create a legitimate expectancy of release sufficient to create the required liberty interest. *Id.* at 171. Thus, it has been held that New York inmates are not entitled to the safeguards afforded by federal due process in their parole release determinations. *See e.g. Farid v. Bouey*, 9:05-CV-1540, 2006 U.S. Dist. LEXIS 15383, *5-6 (N.D.N.Y. April 3, 2006)(citations omitted).

Thus, in this case, plaintiff cannot claim a due process violation with respect to his claims that the defendants implemented a federal statute that provided incentives to deny parole.

### B. Equal Protection

What plaintiff really appears to be claiming in this case is that the federal statute encouraged defendants to deny parole to violent felony offenders as a class. The basis of this type of claim is an equal protection argument. Plaintiff claims that as a violent felony offender, he was treated differently than other offenders whose crime was non-violent. Once again, plaintiff's claim has no merit even if his allegations are completely true. It has been held that violent felony offenders are not a protected class and discrimination against them in terms of parole release is entirely appropriate. *Parks v. Edwards*, 03-CV-5588, 2004 U.S. Dist. LEXIS 3092, *12-13 (E.D.N.Y. March 1, 2004). Thus, plaintiff cannot state an Equal Protection claim.

### C. Ex Post Facto

The plaintiff in *Parks* was also challenging Governor Pataki's alleged policy "'[which] opposes parole for people convicted of violent crimes.'" *Id.* at *3

(brackets in original).  Parks also claimed that because of this policy, the defendants would "ignore their duties" under New York Executive Law section 259-I and Penal Law section 70.40, failing to consider the appropriate factors for release determinations. *Id.* at *3-4.  The court considered whether the policy was a violation of the provision against ex post facto laws. *Id.* at *10-11.

In order to violate the Ex Post Facto Clause of the Constitution, a law must retroactively punish as a crime a previously committed act which was innocent when committed; made the punishment for a crime more burdensome than when the crime was committed; or deprive an individual of the defense to a crime after the crime was committed. *Barna v. Travis*, 239 F.3d at 171.  The court in *Parks* held that alterations in state procedures, even if adverse to an inmate, and adopted after the inmate's incarceration, do not violate the Ex Post Facto clause because they are not "laws."  2004 U.S. Dist. LEXIS 3092 at *11 (citing *Barna, supra*).  Even though a denial of parole may appear to make an inmate's time of incarceration longer, he is still serving the sentence imposed upon him due to his conviction, consistent with the statutes in effect at the time of the crime.  Thus, even if a more strict policy for releasing violent offenders were imposed after plaintiff's incarceration, no Ex Post Facto claim would be stated by this complaint.[2]

---

[2] This court does not question the existence of policies that seek to make it more difficult for violent felony offenders to obtain early release from incarceration.  Together with his objections to this court's previous recommendation, plaintiff submitted various documents supporting this proposition. (Dkt. No. 17). There is also no question that the federal statute is aimed at such a result. *See* 42 U.S.C. § 13703 entitled "Violent Offender Incarceration Grants."  However, as stated in this recommendation, there is no constitutional violation in these policies.

8

### 6. <u>Personal Involvement</u>

Defendants also argue that defendant Goord is not involved in any inmate's parole determination. It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).

In this case, defendants cite N.Y. EXEC. LAW § 259-c for the proposition that the power of determining which inmates are released on parole is vested in the New York State Board of Parole, and that Glenn Goord as the Commissioner of the Department of Correctional Services has no personal involvement in such decisions. A review of section 259-c of the Executive Law shows that defendants are correct. Since defendant Goord does not have authority over parole release, he does not have authority to implement policies regarding the release of inmates, and the complaint may be dismissed as against defendant Goord on this additional basis.

### 7. <u>Eighth Amendment</u>

This complaint may also be dismissed to the extent that plaintiff is attempting to allege an Eighth Amendment violation. Since as stated above, plaintiff has no constitutional right to parole release, a denial of parole for whatever reason does not amount to cruel and unusual punishment. Plaintiff would still be serving the same sentence imposed upon him by the court.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' renewed motion to dismiss for failure

to state a claim under FED. R. CIV. P. 12(b)(6) (Dkt. Nos. 11, 20) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 24, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge