**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ANTHONY BOTTOM,**

                                    **Plaintiff,**

            **v.**                                    **9:03-CV-835**
                                                      **(FJS/GJD)**

**GEORGE E. PATAKI, individually,**
**and in his official capacity as**
**Governor of New York State;**
**BYRON D. TRAVIS, individually,**
**and in his official capacity as Chairman**
**of New York State Division of Parole; and**
**GLEN S. GOORD, individually, and in his**
**official capacity as Commissioner of**
**New York State Dep't of Correctional**
**Services,**

                                    **Defendants**.

_____

**APPEARANCES**                         **OF COUNSEL**

**ANTHONY BOTTOM**
**77-A-4283**
Auburn Correctional Facility
P.O. Box 618
135 State Street
Auburn, New York 13024
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**            **DAVID FRUCHTER, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On July 2, 2003, Plaintiff filed his complaint against Defendants in both their official and individual capacities and sought monetary damages as well as either release from prison or a new parole hearing. *See* Complaint at 1. Plaintiff asserts that Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. §§ 13701 *et seq.* ("the Act"), to create a financial incentive for New York State to deny parole to inmates classified as violent felony offenders. Plaintiff further alleges that this federal statute, which includes sections providing for "Truth-in-Sentencing Incentive Grants," increases the time that violent offenders like him will spend serving their sentences in jail. Plaintiff also claims that Defendants improperly denied him parole because they did so in reliance on the Act, which is unconstitutional because it treats violent felony offenders, such as him, differently than it treats non-violent felony offenders.

Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Plaintiff opposed the motion. On June 11, 2004, Magistrate Judge DiBianco issued a Report-Recommendation in which he recommended that the Court dismiss the action based upon *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* Dkt. No. 16. Plaintiff objected to that recommendation; and, in an Order dated March 21, 2005, this Court rejected the Report-Recommendation, denied Defendants' motion to dismiss without prejudice to renew, and instructed Defendants to notify Magistrate Judge DiBianco and Plaintiff whether they intended to renew their motion in light of *Wilkinson v. Dotson*, 544 U.S. 74 (2005). *See* Dkt. No. 19.

On March 30, 2005, Defendants notified the Court and Plaintiff that they were renewing

their original motion to dismiss, but on different grounds.  *See* Dkt. No. 20.  Defendants argued

that Plaintiff's complaint was without merit because inmates do not have a constitutional right to

parole.  Additionally, Defendants contended that Plaintiff could not hold Defendant Goord, as

Commissioner of the Department of Correctional Services ("DOCS"), liable for damages because

he was not involved in any inmate's parole determination.

On May 24, 2006, Magistrate Judge DiBianco issued a Report-Recommendation in which

he recommended that the Court grant Defendants' renewed motion to dismiss Plaintiff's

complaint in its entirety.  Specifically, Magistrate Judge DiBianco found that, although the

Supreme Court's decision in *Heck* barred Plaintiff's "immediate release on parole" claim, the

Court should consider the merits of Plaintiff's request for a new parole hearing in light of the

Supreme Court's decision in *Wilkinson*.  Additionally, Magistrate Judge DiBianco concluded that

Plaintiff could not seek damages against state officers in their official capacities and

recommended that the Court dismiss the claims against Defendant Goord because he does not

have the authority to implement policies regarding the release of inmates.

In considering the merits of Plaintiff's claim, Magistrate Judge DiBianco concluded that

Plaintiff had no due process claim based upon Defendants' implementation of a federal statute

that provides incentives to deny parole because an inmate does not possess a liberty interest

under the New York statutory scheme in parole decisions.  *See* Report-Recommendation at 6-7.

Moreover, Magistrate Judge DiBianco concluded that discrimination against violent felony

offenders in terms of parole release does not violate the Equal Protection Clause because violent

offenders are not members of a protected class.  *See id.* at 7.  Furthermore, Magistrate Judge

DiBianco concluded that Defendants' actions did not violate the *Ex Post Facto* Clause of the

Constitution because an alteration of state law, even if it adversely affects an inmate and is adopted after that inmate's incarceration, is not a "law." *See id.* at 8. Specifically, he explained that, although denial of parole may appear to make an inmate's time of incarceration longer, the inmate is still serving the sentence imposed upon him due to his conviction, consistent with the statutes in effect at the time of the crime. *See id.* at 8. Finally, Magistrate Judge DiBianco found that Plaintiff's complaint did not state an Eighth Amendment claim because he had no constitutional right to parole release. Accordingly, Magistrate Judge DiBianco recommended that this Court grant Defendants' motion to dismiss for failure to state a claim. Currently before the Court are Plaintiff's objections to that recommendation.

## II. DISCUSSION

**A.     Standards of review**

### *1. Review of Magistrate Judge's Report-Recommendation*

A district court judge must review the findings and recommendations in a magistrate judge's report-recommendation to which a party has filed timely objections *de novo* or for clear error those findings and recommendations to which the parties do not object. *See Gill v. Smith*, 283 F. Supp. 2d 763, 766 (N.D.N.Y. 2003) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)) (other citations omitted).

### *2. Standard of review for a motion to dismiss*

"When ruling on a motion pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted, the court must accept the material facts alleged in the

complaint as true." *Cohen v. Koenig,* 25 F.3d 1168, 1171-72 (2d Cir. 1994) (citation omitted).

Moreover, the court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'" *Id*. at 1172

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)) (other

citation omitted).  In addition, because "[*p*]*ro se* plaintiffs are often unfamiliar with the

formalities of pleading requirements . . . the Supreme Court has instructed the district courts to

construe *pro se* complaints liberally and to apply a more flexible standard in determining the

sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel."

*Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir. 1991) (citations omitted).  Finally, in ruling on a

motion to dismiss, the court may only consider "the allegations of the complaint and any

documents attached to or incorporated by reference in the complaint[.]"  *Dangler v. New York

City Off Track Betting Corp.*, 193 F. 3d 130, 138 (2d Cir. 1999) (citation omitted).


**B.      Official capacity claims**

"Official capacity suits seek, in all aspects other than the party named as defendant, to

impose liability on the government." *Yorktown Med. Lab., Inc. v. Perales*, 984 F.2d 84, 87 (2d

Cir. 1991).  Therefore, "[o]fficial capacity suits brought in federal court against a state, state

agencies, or state officials must overcome the immunity accorded the states under the Eleventh

Amendment." *Id*. (footnote omitted).  Additionally, "[a]s a general matter, the Eleventh

Amendment bars suits of any sort against a state in federal court unless the state has consented to

be sued or Congress has expressly abrogated the state's immunity." *Kostok v. Thomas* 105 F.3d

65, 68 (2d Cir. 1997) (footnote omitted).

Applying these principles, Magistrate Judge DiBianco found that the Eleventh Amendment barred Plaintiff's claims against Defendants in their official capacities.  Accordingly, Magistrate Judge DiBianco recommended that the Court dismiss Plaintiff's official capacity claims with prejudice.

Plaintiff objects to this recommendation because he asserts that each Defendant was personally involved in the alleged constitutional deprivation and that Defendants' official conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See* Plaintiff's Objections to the Report-Recommendation at 3 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  Specifically, Plaintiff asserts that the Parole Board improperly denied him parole in 2004, after he notified the Parole Board at some point after his 2002 parole hearing  about his concern regarding the constitutionality of the Act.  *See id*. at 4.  Plaintiff claims that, because Defendants were on notice of his concerns and nonetheless elected to follow the Act and not remedy the alleged constitutional violation, Defendants were violating state statutes and therefore are liable to him for damages pursuant to § 1983.  Accordingly, Plaintiff requests that this Court find that Defendants are not immune from suit.

Despite Plaintiff's objections, there can be no doubt that the Eleventh Amendment bars Plaintiff's claims for damages against Defendants in their official capacities.[1]  However, Plaintiff may assert his claims against Defendants in their individual capacities to the extent that he can

---

[1] It appears that Plaintiff's objection to this recommendation results from his confusion about the difference between "official capacity" suits and Defendants who are acting in their official capacities.  The Eleventh Amendment bars Plaintiff from suing Defendants in their official capacities because that would be equivalent to a suit against the state.  However, the Eleventh Amendment does not bar Plaintiff from suing Defendants in their individual capacities for actions that they took as state employees.

establish that they were personally involved in the alleged violation of his constitutional rights.
Accordingly, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses
Plaintiff's claims against Defendants in their official capacities.

**C.**   **Application of *Wilkinson v. Dotson* to Plaintiff's claims**

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court addressed the issue of
whether two state prisoners could bring a claim that Ohio's parole procedures violated the
Federal Constitution under 42 U.S.C. § 1983, or whether they must instead seek relief
exclusively under the federal habeas corpus statutes. *See id.* at 76.  The Court concluded that the
plaintiffs could bring their claims under § 1983.  *See id.*  The Court explained that, although "a
§ 1983 action will not lie when a state prisoner challenges 'the fact or duration of his
confinement,'. . . and seeks either 'immediate release from prison,' or the 'shortening' of his term
of confinement, . . .," *id.* at 79 (internal citations omitted), "*Wolff* makes clear that § 1983
remains available for procedural challenges where success in the action *would not necessarily*
spell immediate or speedier release for the prisoner[,]" *id.* at 81.  Additionally, the Court noted
that "*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would
necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Id.*
However, the term "sentence" does not refer to prison procedures, such as parole proceedings,
"but to substantive determinations as to the length of confinement." *Id.* at 83 (citation omitted).
"*Heck* uses the word 'sentence' interchangeably with such other terms as 'continuing confinement'
and 'imprisonment.'" *Id.* (citations omitted).  The Court concluded that, because success for
either prisoner "means at most a new parole hearing at which Ohio parole authorities may, in

their discretion, decline to shorten [their] prison term . . .," *id.* at 82 (citations omitted), "neither [claim] lies at 'the core of habeas corpus[,]'" *id.* (quoting *Presier*, 411 U.S., at 489, 93 S. Ct. 1827).

In his Report-Recommendation, Magistrate Judge DiBianco noted that *Heck* stands for the proposition that a plaintiff may not bring a § 1983 action if a disposition in the plaintiff's favor would necessarily imply the invalidity of a conviction or sentence, unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court.  *See* Report-Recommendation at 4 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)).  Magistrate Judge DiBianco also noted, however, that in *Wilkinson*, the Supreme Court held that, where a plaintiff challenges procedures that will not necessarily lead to a speedier release, the claim is cognizable under § 1983.  *See id.* (citing *Wilkinson v. Dotson*, 544 U.S. 74, 82-83 (2005)).  Thus, Magistrate Judge DiBianco concluded that, under *Heck*, Plaintiff's request for "immediate release on parole" was barred, but based on *Wilkinson*, to the extent that Plaintiff challenged the procedures used to deny him parole and sought only a new parole hearing, the court should consider the merits of the claim.[2] Accordingly, Magistrate Judge DiBianco recommended that this Court apply *Wilkinson* to this case and consider the merits of Plaintiff's claim for a new parole hearing.

Plaintiff objects to this recommendation, claiming that the Court should rely on *Wilkinson* in its entirety and that Magistrate Judge DiBianco's "continued reliance on *Heck v. Humphrey*,

---

[2] Magistrate Judge DiBianco noted, however, that *Wilkinson* might not apply to Plaintiff's situation because the Court in *Wilkinson* did not address the merits of any release decision that a Parole Board could have made.  *See* Report-Recommendation at 5 n.1.  Thus, unlike Plaintiff, whose prison sentence might be shortened if the Court finds that New York improperly denied him parole, the length of the inmate's confinement in *Wilkinson* was not at issue.  *See id.*

512 U.S. 477 (1994), is totally misplaced in light of the U.S. Supreme Court ruling in *Wilkinson v. Dotson*, 544 U.S. 74, 83-84 (2005)." *See* Plaintiff's Objections to the Report-Recommendation at 4. Moreover, Plaintiff asserts that *Wilkinson* allows him both to raise procedural due process and equal protection claims concerning how the parole board came to a decision under § 1983 and to seek declaratory and injunctive relief. *See id.* at 4-5. Accordingly, Plaintiff requests that this Court rely on *Wilkinson* in its entirety in evaluating his claims and, in doing so, find that he is entitled to the relief that he seeks.

Section 1983 provides a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws[,]" 42 U.S.C. § 1983, and gives a court the power to grant relief when federally-protected rights have been violated under color of state law, *see id.* Plaintiff asserts that he would have already been paroled if not for the passage of the Act. However, under *Heck*, Plaintiff cannot be granted immediate release because such relief would imply the unlawfulness of Plaintiff's sentence; and, despite Plaintiff's argument to the contrary, *Wilkinson* did not overrule *Heck*. Instead, *Wilkinson* only addressed challenges to the procedures that state officials use to make parole decisions. Thus, *Heck* remains applicable to claims that challenge the duration of confinement, such as Plaintiff's claim seeking immediate release.

Therefore, Plaintiff may maintain his claim under § 1983 only to the extent that he is challenging the procedural grounds upon which the Parole Board relied to deny him parole, i.e., its reliance on the Act. Accordingly, insofar as Plaintiff seeks a new parole hearing challenging the procedures that the Parole Board used to deny him parole, the Court adopts Magistrate Judge DiBianco's recommendation and will address the merits of this claim.

**D.     Plaintiff's due process claim**

In his complaint, Plaintiff asserts that Defendants violated his right to due process by

relying upon the Act as a basis for its decision to deny him parole.  To support this position,

Plaintiff claims that the Act encourages officials to violate New York's existing parole statute and

provides them with a financial incentive to deny parole to violent felony offenders without

properly analyzing the factors listed in New York Executive law § 259-I.

An inmate may challenge his parole hearing based on a violation of due process if he has

"a legitimate expectancy of release that is grounded in the state's statutory scheme."  *Barna v.*

*Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citations omitted).  However, "[t]he New York parole

scheme is not one that creates in any prisoner a legitimate expectancy of release."  *Id.* at 171.

Rather,

> [t]he statute governing parole provides expressly that
> "[d]iscretionary release on parole shall not be granted merely as a
> reward for good conduct or efficient performance of duties while
> confined but after considering if there is a reasonable probability
> that, if such inmate is released, he will live and remain at liberty
> without violating the law, and that his release is not incompatible
> with the welfare of society and will not so deprecate the
> seriousness of his crime as to undermine respect for law."

*Id.* (quoting N.Y. Exec. Law § 259-i(2)(c)(A)).

Therefore, because, under New York's statutory scheme, Plaintiff does not have a

legitimate expectancy of release, he does not have a liberty interest in parole that is protected by

the Due Process Clause.  *See id.* (citing *Boothe v. Hammock*, 605 F. 2d at 664).

Absent such an interest, an inmate may only bring a due process claim if the denial of

parole is either arbitrary or capricious.  *See Romer v. Travis*, No. 03 Civ. 1670, 2003 WL

21744079, *6 (S.D.N.Y. July 29, 2003) (noting that because "'[t]he New York parole scheme is

not one that creates in any prisoner a legitimate expectancy of release . . .' [an inmate] can claim a

due process violation only if the Parole Board has denied his release 'arbitrarily or capriciously.'"

(internal quotation and other quotation omitted) (footnote omitted)).  Under New York Codes,

Rules and Regulations, if parole is denied, "the inmate shall be informed in writing, within two

weeks of his interview, of the factors and reasons in detail for such denial."  N.Y. Comp. Codes

R. & Regs. tit. 9, § 8002.3 (2005).  Moreover, "[w]here . . . the prisoner's minimum sentence was

set by the court and not by the Parole Board, the Board must specifically consider, among other

factors, 'the seriousness of the offense with due consideration to the type of sentence, length of

sentence and recommendations of the sentencing court.'"  *Romer*, 2003 WL 21744079, at *6

(quoting Exec. Law § 259-i(2)(c)(A), - i(1)(a)) (other citation and footnote omitted).  "The Parole

Board may give whatever weight it deems appropriate to the statutory factors, and is 'entitled to

determine that the nature of the crime outweighed the positive aspects of [petitioner's] record.'"

*Id.* (quoting *Morel v. Thomas*, 2003 WL 21488017 at *4-5) (footnote omitted).  Finally, the

statutory guidelines, based upon the crime's severity and the inmate's past criminal history, "'are

intended only as a guide, and . . . not [as] a substitute for the careful consideration of the many

circumstances of each individual case.'"  *Barna*, 239 F.3d at 171 (quoting 9 N.Y.C.R.R.

§ 8001.3(a)).

Relying upon these well-established legal principles, Magistrate Judge DiBianco

concluded that Plaintiff does not have a liberty interest in parole that is protected by the Due

Process Clause.  *See* Report-Recommendation at 6 (citations omitted).  Accordingly, Magistrate

Judge DiBianco recommended that this Court dismiss Plaintiff's claims that Defendants violated

his right to due process by implementing a federal statute that provided incentives to deny him parole.

Plaintiff objects to this recommendation because he claims that, under *Wilkinson*, due process claims related to how the Parole Board reached its decision are cognizable under § 1983. *See* Plaintiff's Objections to the Report-Recommendation at 4.  Moreover, Plaintiff reiterates his argument that the Act violates the legislative intent of § 259-I of New York Executive Law, which requires that the Parole Board consider certain factors when deciding whether or not to deny an inmate parole.  *See id.* at 4-5.[3]  Plaintiff claims that the alleged financial incentive that the Act creates for the Parole Board to deny violent felony offenders parole without first considering § 259-I's factors violates a violent felony offender's due process rights under the Constitution.  Accordingly, Plaintiff requests that this Court reject Magistrate Judge DiBianco's recommendation to dismiss this claim and find that the Act violates his due process right to a proper parole hearing.

As noted, because New York's parole scheme does not create a legitimate expectancy of release, Plaintiff may not challenge the denial of his parole based upon a violation of his due process rights.  *See Barna*, 239 F.3d at 170.  Thus, to show that he is entitled to the relief that he seeks, Plaintiff must demonstrate that the Parole Board denied his release "arbitrarily or capriciously" and failed to notify him within two weeks of his interview of the factors and reasons for his parole denial.  Plaintiff's complaint, however, does not contain any such

---

[3] Plaintiff is correct that, under *Wilkinson*, an inmate may bring a due process claim against state officials challenging the procedures of a parole board under § 1983.  However, it does not follow that a plaintiff has a due process claim based upon such a challenge where the state in which he is incarcerated has a parole scheme that does not create in a prisoner a legitimate expectancy of release.

allegations.  Accordingly, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's due process claims.

### E.       Plaintiff's equal protection claim

The Equal Protection Clause provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  In other words, "[t]he Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).

Plaintiff alleges that the Act impermissibly encourages Defendants to treat violent felony offenders, such as him, differently than non-violent felony offenders in terms of parole, and, therefore, violates his right to equal protection.  However, Magistrate Judge DiBianco concluded that, even if Plaintiff's allegations were true, the claim is without merit because violent felony offenders are not members of a protected class and, therefore, discrimination against them in terms of parole release is completely appropriate.  Accordingly, Magistrate Judge DiBianco recommended that this Court dismiss Plaintiff's equal protection claim.

Plaintiff objects to this recommendation because he claims that, under *Wilkinson*, equal protection claims related to how the Parole Board reaches a decision are cognizable under § 1983.[4]  *See* Plaintiff's Objections to the Report-Recommendation at 4.  Accordingly, Plaintiff

---

[4] As with his due process argument, Plaintiff is correct that, under *Wilkinson*, an inmate may bring an equal protection claim against state officials challenging the procedures of a parole board under § 1983.  However, the fact that a plaintiff may bring such a claim does not mean that the claim will be successful.

requests that this Court reject Magistrate Judge DiBianco's recommendation and find that Defendants' reliance upon the Act as a basis for denying him parole violates the Equal Protection Clause because it results in the Parole Board treating him, and other violent felony offenders, differently than it treats non-violent felony offenders.

As Magistrate Judge DiBianco correctly noted, violent felony offenders are not members of a protected class under the Equal Protection Clause and, therefore, discrimination against them in terms of parole release is not unconstitutional.  *See Parks v. Edwards*, Nos. 03 CV 5588, 03 CV 6234, 2004 WL 377658, *4 (E.D.N.Y. Mar. 1, 2004).  Accordingly, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's equal protection claim.[5]


**F.      Plaintiff's *Ex Post Facto* claim**

The *Ex Post Facto* Clause refers to "legislative action that retroactively 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed.'"  *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S. Ct. 68-69, 70 L. Ed. 216 (1925)) (other citation omitted).  "[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable."  *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995).

---

[5] Additionally, the Court notes that violent felony offenders are not similarly situated to non-violent felony offenders.  Thus, the Equal Protection Clause does not require that the State treat these two different types of felons the same.

Relying upon these legal principles, Magistrate Judge DiBianco concluded that, although a denial of parole may appear to make an inmate's time of incarceration longer, that inmate is still serving the sentence that the court imposed upon him when he was convicted, consistent with the statutes in effect at the time of the crime. *See* Report-Recommendation at 8. Moreover, although Magistrate Judge DiBianco conceded that there are policies that seek to make it more difficult for violent felony offenders to obtain early release from incarceration and that the Act seeks such a result, he concluded that Plaintiff has no *Ex Post Facto* claim because these policies do not violate the Constitution. Accordingly, Magistrate Judge DiBianco recommended that this Court dismiss Plaintiff's *Ex Post Facto* claim.

Plaintiff objects to this recommendation because he claims that the Act improperly penalizes violent felony offenders who were incarcerated prior to its enactment. Relying upon a *New York Law Journal* article, Plaintiff asserts that inmates who were incarcerated prior to the enactment of the Act had reason to believe that they would be paroled and may have even pled accordingly. *See* Plaintiff's Objections to the Report-Recommendation at Attachment (*New York Law Journal* article). Accordingly, Plaintiff requests that this Court find that the Act violates the *Ex Post Facto* Clause.

Despite Plaintiff's arguments to the contrary, a statute does not violate the *Ex Post Facto* Clause simply because expectations are upset. "A law that is merely procedural and does not increase a prisoner's punishment cannot violate the *Ex Post Facto* Clause even when applied retrospectively." *Barna*, 239 F.3d at 171 (citation omitted). Moreover, "[t]he Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion." *Id.* at

-15-

171 (citation omitted).  "Such guidelines 'are not "laws" within the meaning of the ex post

facto clause.'"  *Id.* (quotation and other citation omitted).  Since Plaintiff has not been

incarcerated for a period beyond that which he was sentenced to serve, the Court adopts

Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's *Ex Post Facto* claim.[6]


**G.     Plaintiff's claim against Defendant Goord**

"In this Circuit personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson*,

568 F.2d 930, 934 (2d Cir. 1977) (citations omitted).  The fact that an individual is "in a high

position of authority is an insufficient basis for the imposition of personal liability."  *Id.*

(citation omitted).

A plaintiff may demonstrate the personal involvement of a supervisory defendant by

evidence that

> (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed
> of the violation through a report or appeal, failed to remedy the
> wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed
> the wrongful acts, or (5) the defendant exhibited deliberate
> indifference to the rights of inmates by failing to act on
> information indicating that unconstitutional acts were
> occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

------

[6] Even if the Court were to assume that the Act affects Plaintiff's expectation of parole,
Plaintiff's claim would still fail because he has no constitutional right to parole.  *See Barna,* 239
F.3d at 170.

Defendants state that, as Commissioner of DOCS, Defendant Goord is not involved in any inmate's parole determination and, therefore, he was not personally involved in the alleged violation of Plaintiff's constitutional rights.  Magistrate Judge DiBianco agreed with this assertion, noting that, according to § 259-c of New York Executive Law, the authority to determine which inmates are released on parole is vested in the New York State Board of Parole, with which Defendant Goord has no personal involvement.  Accordingly, Magistrate Judge DiBianco recommended that this Court dismiss the complaint against Defendant Goord on this basis.

Plaintiff objects to this recommendation because he claims that, by not remedying the effects of the Act after Plaintiff put him on notice of its unconstitutionality, Defendant Goord was personally involved in the alleged violation of Plaintiff's constitutional rights.[7] *See* Plaintiff's Objections to the Report-Recommendation at 3 (noting that "where defendant's [sic] failed to remedy a constitutional violation after it has been brought to their attention on appeal or letter, in the capacity of respondent superior, they are in fact liable pursuant to § 1983") (citation omitted)).  Accordingly, Plaintiff requests that this Court allow the action to proceed against Defendant Goord.

Despite Plaintiff's assertion that Defendant Goord was personally involved in the violation of his constitutional rights, only the New York State Board of Parole, with which Defendant Goord has no involvement and over which he has no control, has the statutory authority to determine which prisoners to release on parole.  Thus, it is clear that Plaintiff

---

[7] The Court notes that Defendant Goord, who is a state official, has no authority to "remedy" a federal statute.

-17-

cannot establish a claim that Defendant Goord was involved in the decision to deny him parole. Accordingly, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's claim against Defendant Goord.

**H.     Plaintiff's Eighth Amendment claim**

"Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United States v. Yousef,* 327 F.3d 156, 163 (2d Cir. 2003) (citations omitted). Moreover, "[t]he Eighth Amendment 'forbids only extreme sentences that are "grossly disproportionate" to the crime . . .'" *Id.* (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).

Plaintiff asserts in his complaint that his incarceration beyond the time that he expected constitutes cruel and unusual punishment. However, Magistrate Judge DiBianco found that, because Plaintiff has no constitutional right to parole release, a denial of parole for whatever reason does not amount to cruel and unusual punishment. Furthermore, Magistrate Judge DiBianco reiterated that the Act did not extend Plaintiff's period of incarceration. Accordingly, Magistrate Judge DiBianco recommended that this Court dismiss Plaintiff's Eighth Amendment cruel and unusual punishment claim.

Plaintiff objects to this recommendation because he claims that denying violent felony offenders parole without establishing a reason for the denial is unconstitutional. *See*

Plaintiff's Objections to the Report-Recommendation at Attachment (*New York Law Journal* article). Specifically, Plaintiff claims that he has been incarcerated beyond the time he expected, based upon his reasonable expectations at the time of his sentence. *See id*. Thus, Plaintiff asserts that the extension of his prison time constitutes cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, Plaintiff requests that this Court grant him a new parole hearing or release him from prison as well as award him damages for the time he has been incarcerated beyond his expectations.

"'Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the prisoner's liberty interest.'" *Larocco v. N.Y.S. Div. of Parole*, No. 9:05-CV-1602, 2006 WL 1313341, *3 (N.D.N.Y. May 12, 2006) (quoting *Wright v. Kane*, No. 94 Civ. 3836, 1997 WL 746457, *4 (S.D.N.Y. Dec. 2, 1997)) (other citation omitted). However, Plaintiff has not demonstrated that he has been incarcerated beyond the termination of his sentence, and he has no liberty interest in being granted parole. *See id.* Therefore, "plaintiff cannot show that he was deprived of a constitutional right 'because he was not incarcerated beyond his term . . . .'" *Id.* (quoting *Wright*, 1997 WL 746457, at *4) (footnote omitted). Accordingly, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's Eighth Amendment claim against Defendants.

## III. CONCLUSION

_____After reviewing Magistrate Judge DiBianco's May 24, 2006 Report-Recommendation, Plaintiff's objections thereto, the relevant parts of the record and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's May 24, 2006 Report-Recommendation

is **ADOPTED** in its entirety; and the Court further

_____**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgement in favor of Defendants

and close this case.

**IT IS SO ORDERED**.

Dated: August 7, 2006
         Syracuse, New York


_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

-20-